**MAYALL HURLEY, P.C.**
A Professional Corporation
112 South Church Street
Lodi, California 95240
Telephone: (209) 477-3833
MARK E. BERRY, ESQ.
CA State Bar No. 155091

Attorneys for Defendant,
SIERRA PACIFIC SYNOD OF THE EVANGELICAL LUTHERAN CHURCH IN AMERICA
(Erroneously sued herein as SIERRA PACIFIC SYNOD)

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MEGAN ROHRER, individually, | ) Case No. 3:23-cv-00923 |
| Plaintiffs, | ) **SIERRA PACIFIC SYNOD MOTION TO DISMISS  COMPLAINT** |
| vs. | ) **[FRCP 12(b)(6)]** |
| EVANGELICAL LUTHERAN CHURCH IN AMERICA; SIERRA PACIFIC SYNOD, and DOES 1 through 25, inclusive; | ) DATE:      June 15, 2023 ) TIME:       9:30am ) JUDGE:   Laurel Beeler |
| Defendants, | ) Fist Amended Complaint Filed: 2/1/23 |

**TABLE OF CONTENTS**

**I. BACKGROUND** .................................................................................................... 1

**II. FACTUAL BACKGROUND** .............................................................................. 1

**III. STANDARD OF REVIEW** ............................................................................... 2

**IV. ARGUMENT** ..................................................................................................... 3

   A.   SYNOD IS A RELGIOUS ENTITY AND THE MINISTERIAL EXCEPTION APPLIES TO ALL EMPLOYMENT CAUSES OF ACTION. ........................................................................ 3

      1.   THERE IS NO JOINT EMPLOYER RELATIONSHIP. ........................................ 5

         a.   ROHRER'S REFERENCE TO "THE CHURCH" DOES NOT SET FORTH FACTS SPECIFIC TO THE SYNOD AS A SEPARATELY SUED DEFENDANT AND THUS THE COMPLAINT IS IMPERMISSIBLE. ........................................................................ 5

         b.   THE SYNOD IS A SEPARATELY INDENTIFIED ENTITY AND TO PERMIT ROHRER TO PROCEDE ON A THEORY OF JOINT EMPLOYMENT VIOLATES THE RELIGIOUS FEREEDOM OF BOTH DEFENDANTS. ............................................................. 6

   B.   THE FIRST CAUSE OF ACTION FAILS BECAUSE ROHRER WAS THE BISHOP AND AS THE SYNOD'S HEAD CLERIC COULD HAVE TAKEN IMMEDIATE DISCIPLINE OR REMEDIATION NECESSARY TO ELMINATE ANY ALLEGED HOSTILE CONDITIONS. ............ 7

      1.   TITLE VII DOES NOT APPLY TO THE ALLEGED FACTS. ............................ 9

      2.   ROHRER FAILS TO ALLEGE FACTS SPECIFIC TO THE SYNOD. ................. 10

   C.   THE SECOND CAUSE OF ACTION FAILS BECAUSE ROHRER'S OWN FAILURE TO REMEDIALLY ACT CANNOT BE THE BASIS FOR A WHISTLEBLOWER CLAIM. ................... 10

   D.   THE THIRD CAUSE OF ACTION FOR DEFAMATION FAILS BECAUSE ROHRER FAILS TO IDENTIFY SPECIFIC A STATEMENT(S) ATTRIBUTED TO THE SYNOD. ................................. 11

E.   THE FOURTH CAUSE OF ACTION FAILS BECAUSE MISIDENTIFYING ROHRER AS A FEMALE IS NOT EXTREME AND OUTRAGEOUS CONDUCT...........................................................12

F.   THE FIFTH CAUSE OF ACTION FAILS BECAUSE AN NEID CAUSE OF ACTION DOES NOT APPLY TO THE UNDERLYING FACT PATTERN. ....................................................................14

G.   THE SIXTH CAUSE OF ACTION FAILS BECAUSE ROHRER FAILS TO IDENTIFY WITH WHOM SHE WAS CONTRACTED. ...................................................................................................15

**V. CONCLUSION** ............................................................................................................................**15**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF AUTHORITIES

**CASES**

<u>A.B. v. Hilton Worldwide Holdings Inc.,</u> (D. Or. 2020)   484 F. Supp. 3d 921, 943 (D. Or. 2020)............... 6

<u>Adams v. Johnson</u> (9th Cir. 2004) 355 F.3d 1179, 1183. .................................................................. 3

<u>Adobe Sys. Inc. v. Blue Source Grp., Inc</u>. ................................................................ 5, 11, 15

<u>Agarwal v. Johnson</u> (1979) 25 Cal.3d 932, 946 ............................................... 13

<u>Ashcroft v. Iqbal</u> (2009) 556 U.S. 662 .................................................................. 3

<u>Ashcroft v. Iqbal</u> (2009) 556 U.S. 662, 678 ........................................................ 3

<u>Austin v. Kiewit Infrastructure West Co.</u> (ND CA 2018) 2018 WL 11375900 ........................... 6

<u>Balistreri v. Pacifica Police Department,</u> (1990) 901 F.2d 696 ............................................. 2

<u>Balistreri v. Pacifica Police Department,</u> (9th Cir. 1988 901 F.2d 696, 699 ............................. 2

<u>Bell Atlantic Corporation v. Twombly</u> (2007) 550 US 544, 554, 555, 556 .................... 1, 3

<u>Berkley v. Dowds</u> (2007) 152 Cal.App.4th 518, 534 ........................................ 13

<u>Bollard v. California Province of the Society of Jesus</u> (9th Cir.1999 )196 F.3d 940 ......................... 9, 10

<u>Bostock v. Clayton County, Georgia</u> (2020) ............................................... 9

<u>Burgess v. Superior Court</u> (1992) 2 Cal.4th 1064, 1076 ....................................... 15

<u>Cahill v. Liberty Mutual Insurance Co.,</u> (9th Cir. 1996) 80 F.3d 336, 337-338........................ 2

<u>Christensen v. Superior Court</u> (1991) 54 Cal.3d 868, 879 .......................................... 14

<u>Cleveland v. United States,</u> 329 U.S. 14................................................................ 5

<u>Conley v. Gibson</u> (1957) 355 U.S. 41, 47 .............................................................. 3

<u>Davidson v. City of Westminster</u> (1982) 32 Cal 3rd 197, 209 ..................................... 13

<u>Erickson v. Pardus</u> (2007) 551 US 89, 94 ............................................................ 1

<u>Fayer v. Vaughn</u> (9th Cir. 2011) 649 F.3d 1061, 1064 ........................................... 3

<u>Fireman's Fund v. Ins. Co. v. City of Lodi</u> (9th  Cir. 2002)  302 F.3d. 928, 939 ........................... 2

<u>Hishon v. King & Spalding</u> (1984) 467 U.S. 69, 73.......................................... 3

<u>Hughes v. Pair</u> (2009) 46 Cal.4th 1035, 1050-1051 ...................................... 13

<u>Jacobson v. Massachusetts,</u> 197 U.S. 11 .............................................................. 5

DEFENDANTS' MOTION TO DISMISS COMPLAINT [FRCP 12(b)(6)]

Johnson v. Shasta County (E.D. Cal. 2015) 83 F.Supp.3d 918, 930 .................................................. 3

Kedroff v. St. Nicholas Cathedral of the Russian Orthodox Church, 344 U.S. 94, 116, (1952) ............ 7

Lawler v. Montblanc North America, LLC (9th Cir. 2013) 704 F.3d 1235, 1245 ........................... 14

Molien v. Kaiser Foundation Hospitals (1980) 27 Cal.3d 916, 928 ............................................. 15

Prince v. Massachusetts, 321 U.S. 158 ...................................................................................... 5

Reynolds v. United States, 98 U.S. 145 ..................................................................................... 5

Sanders v. City of Fresno (2005) 2005 U.S. Dist. LEXIS 27375 ............................................... 3

Serbian Eastern Orthodox Diocese v. Milivojevich, (1976) 426 U.S. 696, 713–14 ..................... 5

Sherbert v Verner (1963) 374 U.S. 398, 403 ............................................................................ 5

Taus v. Loftus (2007) 40 Cal.4th 683, 720 ............................................................................. 12

U.S. E.E.O.C. v. Global Horizons, Inc., 860 F. Supp. 2d. 1172, 1183 (D. Haw. 2012) (citing Pac. Maritime

    Ass'n, 351 F.3d at 1277) ................................................................................................ 6

U.S. Equal Emp. Opportunity Comm'n v. Glob. Horizons, Inc. (9th Cir 2019) 915 F.3d 631, 637 ................ 6

Werft v. Desert Southwest Annual Conference of United Methodist Church (9th Cir. 2004)   377 F. 3d 1099,

    1100-1101 ....................................................................................................................... 9, 10

Werft v. Desert Southwest Annual Conference of United Methodist Church (9th Cir. 2004)   377F. 3d 1099,

    1102 ................................................................................................................................. 7

**STATUTES**

42 U.S.C 2000 ............................................................................................................................. 9

Labor Code section 1102.5(b) .................................................................................................... 11

**OTHER AUTHORITIES**

CACI 1600 ................................................................................................................................. 13

CACI 1620 ................................................................................................................................. 15

CACI 300 ................................................................................................................................... 15

**RULES**

Fed. Rules of Civ. Proc., rule 8(a)(2) ................................................................. 2, 5, 11, 15

Fed. Rules of Civ. Proc., rule 12(b)(6) ................................................................. 2, 3

DEFENDANTS' MOTION TO DISMISS COMPLAINT [FRCP 12(b)(6)]

# I.

## BACKGROUND

Plaintiff  Rev. Dr. MEGAN ROHRER (hereinafter "ROHRER") alleges that the SIERRA PACIFIC SYNOD  (hereinafter "SYNOD") and EVANGELICAL LUTHERAN CHURCH IN AMERICA  (hereinafter "ELCA") unlawfully terminated him by forcing him to resign and engaged in defamatory and outrageous behavior while he was Bishop of the SYNOD.

ROHRER alleges the following:

*FEDERAL CAUSES OF ACTION*

&bull; FIRST CAUSE OF ACTION:        **Hostile Work Environment Sexual Harassment**

*STATE LAW CAUSES OF ACTION*

&bull; SECOND CAUSE OF ACTION:   **Whistleblowing Retaliation**

&bull; THIRD CAUSE OF ACTION:       **Defamation**

&bull; FOURTH CAUSE OF ACTION:   **Intentional Infliction of Emotional Distress**

&bull; FIFTH CAUSE OF ACTION:       **Negligent Infliction of Emotional Distress**

&bull; SIXTH CAUSE OF ACTION:       **Breach of Contract**

## II.

## FACTUAL BACKGROUND

 The following facts are taken from the allegations contained in SORENSON'S complaint (ECF 1). The allegations are taken as true for purposes of this motion only.  Erickson v. Pardus (2007) 551 US 89, 94; Bell Atlantic Corp. v. Twombly (2007) 550 US 554, 556.

The Rev. Dr. Megan ROHRER was a Bishop at the head of the SNYOD which is one of 64 regional divisions of congregations within the ELCA.  (ECF 1 1:17-18;  5:21-24).  He was a Bishop from his election on May 8, 2021 until his resignation on June 4, 2022. (ECF 1 8:15-16; 23:18-19).

The SYNOD is a California corporation with a primary place of business in Oakland, Ca. (ECF 1 5:19-20).

The ELCA is a Minnesota corporation with a principal place of business in Chicago, Il. (ECF 5:10-11)

DEFENDANTS' MOTION TO DISMISS COMPLAINT [FRCP 12(b)(6)]

ROHRER identifies as a transgender male.  (ECF 1 1:8-9).

ROHRER contends that as a result of being misgendered he was subjected to sexual harassment and a hostile work environment.  (ECF 1 2:27-3:4)   ROHRER also contends that as result of his discovery of misclassified SYNOD employees he was forced to resign in violation of Labor Code section 1102.5.  (ECF 1 3:5-10).

ROHRER also contends that Rev. Hazel Salazar-Davidson subjected him to defamatory racist remarks.  (ECF 1 23:4-14).

ROHRER contends that the collective actions of alleged misgendering and alleged defamatory racist remarks are the basis for his IIED and NIED causes of action.  (ECF 1 29:14-6; 30:3-6)

ROHRER contends that his five-year contract as Bishop of the SYNOD was beached prior to its expiration on July 30, 2027.  (ECF 1 30:23-26).

**III.**

**STANDARD OF REVIEW**

Fed. Rules of Civ. Proc., rule 12(b)(6) provides that a party may move to dismiss a complaint if the plaintiff fails to state a claim upon which relief can be granted.  On a motion to dismiss for failure to state a claim under Fed. Rules of Civ. Proc., rule 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party.  Cahill v. Liberty Mutual Insurance Co., (9th Cir. 1996) 80 F.3d 336, 337-338; Fireman's Fund v. Ins. Co. v. City of Lodi (9th  Cir. 2002)  302 F.3d. 928, 939.

A court may dismiss "based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."   Balistreri v. Pacifica Police Department, (9th Cir. 1988 901 F.2d 696, 699.  Under Fed. Rules of Civ. Proc., rule 8(a)(2), a pleading must only contain a "short and plain statement of the claim showing that the pleader is entitled to relief," so as to "give the defendant fair notice of what the . . . claim is and grounds upon which it rests."  Bell Atlantic Corporation v. Twombly (2007) 550 U.S. 544, 555, quoting Conley v. Gibson (1957) 355 U.S. 41, 47.

In order to survive a motion to dismiss, this short and plain statement "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u> (2009) 556 U.S. 662, 678, quoting <u>Bell Atlantic Corp.</u> at 570.  A complaint must include something more than "an unadorned, the-defendant-unlawfully-harmed-me-accusation . . ., labels and conclusions, or a formulaic recitation of the elements of a cause of action." (Citations omitted.)  <u>Ashcroft</u> at 678.  Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.  <u>Ashcroft</u> at 677.  Courts will not assume the truth of legal conclusions merely because they are cast in the form of factual allegations. <u>Sanders v. City of Fresno</u> (2005) 2005 U.S. Dist. LEXIS 27375, at 6.  Ultimately, the inquiry focuses on the interplay between the factual allegations of the complaint and the dispositive issues of law in the action.  <u>Hishon v. King & Spalding</u> (1984) 467 U.S. 69, 73.  A court is not required to accept as true a "legal conclusion couched as a factual allegation." <u>Ashcroft</u> at 678.

To sufficiently plead a claim and withstand a <u>Fed. Rules of Civ. Proc., rule 12(b)(6)</u> motion to dismiss, allegations in a complaint may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.  <u>Johnson v. Shasta County</u> (E.D. Cal. 2015) 83 F.Supp.3d 918, 930.

The Court need not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations."  <u>Fayer v. Vaughn</u> (9th Cir. 2011) 649 F.3d 1061, 1064.  Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss."  <u>Adams v. Johnson</u> (9th Cir. 2004) 355 F.3d 1179, 1183.

**IV.**

**<u>ARGUMENT</u>**

**A.  <u>SYNOD IS A RELGIOUS ENTITY AND THE MINISTERIAL EXCEPTION APPLIES TO ALL EMPLOYMENT CAUSES OF ACTION.</u>**

The First Amendment protects the right of religious institutions "to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine." <u>Kedroff v. Saint Nicholas Cathedral of Russian Orthodox Church in North America</u>, 344 U.S. 94, 116.  It is undisputed that ROHRER was at all times material an ordained Lutheran minister and a

DEFENDANTS' MOTION TO DISMISS COMPLAINT [FRCP 12(b)(6)]

ELCA Bishop serving within the SYNOD.  (ECF 1 1:17-18; 4:3- 5;  4:23-25;  5:25-26).  For purposes of this motion the SYNOD accepts as true and addresses ROHRER'S allegation that he was "forced to resign" and terminated.  (ECF 1 23:17-20).

The government may not interfere with the decision of a religious group to fire one of its minsters.  Hosanna-Tabor Evangelical Lutheran Church and School v. EEOC (2012) 565 U.S 171, 181.  Requiring a church to accept or retain an unwanted minister, or punishing a church for failing to do so, intrudes upon more than a mere employment decision. Such action interferes with the internal governance of the church, depriving the church of control over the selection of those who will personify its beliefs. By imposing an unwanted minister, the state infringes the Free Exercise Clause, which protects a religious group's right to shape its own faith and mission through its appointments. Id. at 188.

It is undisputed that ROHRER was an ordained minister and Bishop within the ELCA. "The purpose of the exception is not to safeguard a church's decision to fire a minister only when it is made for a religious reason. The exception instead ensures that the authority to select and control who will minister to the faithful—a matter "strictly ecclesiastical," Kedroff, 344 U.S., at 119, 73 S.Ct. 143—is the church's alone." Id at 194-195.

Although the court limited the holding of Hosanna-Tabor Evangelical Lutheran Church and School to an employment discrimination challenge to a church's ability to fire a minister, the SYNOD contends that the ministerial exception should be applied to all of ROHRER'S employment causes of action.

The "ecclesiastical abstention doctrine" also applies to ROHRER'S claims.  The ecclesiastical abstention doctrine bars civil courts from exercising jurisdiction over cases involving "theological controversy, church discipline, ecclesiastical government, or the conformity of members of the church to the standard of morals required of them . . . ." Serbian Eastern Orthodox Diocese v. Milivojevich, (1976) 426 U.S. 696, 713–14. Assuming as true that ROHRER was terminated consistent with the findings of The Church's investigation (ECF 1 2:13-19), then the "church discipline" defense would apply and thus the court should not inject itself into the SYNOD'S employment decisions.

Furthermore, ROHRER'S causes of action for defamation, intentional infliction of emotional distress, negligent infliction of emotional distress, and breach of contract should also be dismissed as these claims do not involve a "substantial threat to public safety, peace or order." The court has a long history of avoiding injecting itself into ecclesiastical matters unless "[t]he conduct or actions so regulated have invariably posed some substantial threat to public safety, peace or order. See, e.g., Reynolds v. United States, 98 U.S. 145, Jacobson v. Massachusetts, 197 U.S. 11,  Prince v. Massachusetts, 321 U.S. 158,  Cleveland v. United States, 329 U.S. 14." (parallel citations omitted) Sherbert v Verner (1963) 374 U.S. 398, 403.

1. **THERE IS NO JOINT EMPLOYER RELATIONSHIP.**

   a. **ROHRER'S REFERENCE TO "THE CHURCH" DOES NOT SET FORTH FACTS SPECIFIC TO THE SYNOD AS A SEPARATELY SUED DEFENDANT AND THUS THE COMPLAINT IS IMPERMISSIBLE.**

ROHRER'S pleading has made it all but impossible for the SYNOD to particularly identify actions specific to the SYNOD and those specific to the ELCA.  ROHRER'S complaint identifies "The Church" approximately 62 times when collectively referring to the SYNOD and ELCA and does not afford the SYNOD or the ELCA facts identifying their alleged separate acts.

ROHRER knows who the SYNOD employs and who it does not.  Failing to identify a SYNOD actor(s) and alleged acts relating to these actor(s) is fatal to his complaint.

"A complaint which lumps together multiple defendants in one broad allegation fails to satisfy the notice requirement of Rule 8(a)(2)." Adobe Sys. Inc. v. Blue Source Grp., Inc., (N.D. Cal. 2015) 125 F. Supp. 3d 945, 964.  Thus, "a plaintiff must identify what action each Defendant took that caused Plaintiff['s] harm, without resort to generalized allegations against Defendants as a whole." Id. Accordingly, "a complaint that asserts claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions" is an impermissible type of pleading. A.B. v. Hilton Worldwide Holdings Inc., (D. Or. 2020)   484 F. Supp. 3d 921, 943 (D. Or. 2020).

Furthermore, ROHRER fails to allege facts sufficient to establish that the ELCA and SYNOD are joint employers.  (ECF 1 6:1-7).  Two entities may be joint employers where they

"simultaneously share control over the terms and conditions of employment, such that both should be liable for discrimination relating to those terms and conditions. U.S. Equal Emp. Opportunity Comm'n v. Glob. Horizons, Inc. (9th Cir 2019) 915 F.3d 631, 637 .

"In determining whether a joint employer relationship exists, the Ninth Circuit uses an "economic reality test" which considers "all factors relevant to the particular situation" including "whether the alleged joint employer (1) supervised the employee, (2) had the power to hire and fire him, (3) had the power to discipline him, and (4) supervised, monitored and/or controlled the employee and his work site." U.S. E.E.O.C. v. Global Horizons, Inc., 860 F. Supp. 2d. 1172, 1183 (D. Haw. 2012) (citing Pac. Maritime Ass'n, 351 F.3d at 1277)." Austin v. Kiewit Infrastructure West Co. (ND CA 2018) 2018 WL 11375900. However, for the SYNOD to properly defend any of the causes of action it must know what SYNOD actors and actions are the basis for ROHRER'S claimed damages.

### b. THE SYNOD IS A SEPARATELY INDENTIFIED ENTITY AND TO PERMIT ROHRER TO PROCEDE ON A THEORY OF JOINT EMPLOYMENT VIOLATES THE RELIGIOUS FEREEDOM OF BOTH DEFENDANTS.

ROHRER acknowledges that SYNOD is a California nonprofit corporation. (ECF 1 5:19). "The Synod is one of 64 regional divisions of congregations in the United States and the Caribbean, and one non-geographical synod, which are in turn part of nine regions. Each Synod is headed by a Bishop. A Synod Council is elected at a Synod Assembly, and is considered the Board of Directors of the Synod. The Synod employs the Bishop, who serves on the executive committee with a volunteer vice president, a secretary, and a treasurer." (ECF 1 5:21-26).

Because ROHRER lumps SYNOD together with the ELCA by using the moniker of "The Church," ROHRER fails to identify actions specific to the SYNOD and SYNOD actors sufficient to permit the SYNOD'S individual defense.

ROHRER admits that:

- SYNOD is a separate corporation from ELCA; (ECF 1 5:19-20)
- SYNOD maintains its own "board of directors"; (ECF 1 5:22-24)
- As Bishop ROHRER was the head of the SYNOD; (ECF 1 5:22-23)
- ROHRER was paid by the SYNOD; (Exhibit 1) and

- ROHRER admits that he resigned his position but fails to identify any SYNOD actor that caused the resignation.

If the SYNOD and ELCA are to be considered joint employers, then every single faith which maintains churches within a hierarchical structure, would be considered the joint employer of the other.   At first look this would apply to every Roman Catholic, Anglican, Episcopal, Lutheran, Orthodox, and other churches too numerous to mention here, causing every priest, minister, layperson, and consecrated religious to be not only be the employee of their church, but their hierarchical ecclesiastical district. The very thought of government interference in allowing churches and their ecclesiastical districts to be run as separate and distinct entities is contrary to the establishment clause. "The Free Exercise Clause "protects the power of religious organizations 'to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine.' " Bollard, 196 F.3d at 945(quoting Kedroff v. St. Nicholas Cathedral of the Russian Orthodox Church, 344 U.S. 94, 116, (1952)." (parallel citations omitted) Werft v. Desert Southwest Annual Conference of United Methodist Church (9th Cir. 2004)  377F. 3d 1099, 1102.

**B. THE FIRST CAUSE OF ACTION FAILS BECAUSE ROHRER WAS THE BISHOP AND AS THE SYNOD'S HEAD CLERIC COULD HAVE TAKEN IMMEDIATE DISCIPLINE OR REMEDIATION NECESSARY TO ELMINATE ANY ALLEGED HOSTILE CONDITIONS.**

ROHRER admits that as Bishop he was the head of the SYNOD.  (ECF 1 5:5:21-24).  He also admits that he resigned his position and was not "fired."  (ECF 1 23:17-20).   ROHRER contends that his termination was the result of his actions stemming from his termination of another minister, Rev. Nelson Rabell-Gonzalez. (ECF 1 1:27-2:3).  ROHRER admits that Rev. Rabell-Gonzalez reported to him.  (ECF 1 2:2-3).  By his pleading admissions, it is clear that despite ROHRER'S contentions, any termination of his employment is directly related to a personnel matter involving ROHRER'S handling of Rev. Rabell-Gonzalez' removal.  ROHRER acknowledges that he did an "extraordinary amount of research and consulted with dozens of victims, witnesses, and stakeholders" in investigating Rev. Rabell-Gonzalez prior to ROHRER announcing Rev. Rabell-Gonzalez' removal.  (ECF 1 2:8-9).  A plain reading of the complaint

clearly indicates that ROHRER'S handling of Rev. Rabell-Gonzalez' removal is the basis for all ROHRER'S causes of action.

Regardless of ROHRER'S irrelevant contention of historic church "colonization and racism" the decisive issue in his claim is: *"Can ROHRER pursue an employment cause of action and plead around the SYNOD'S affirmative defense of 'ministerial exception,' based upon the alleged outcropping of an ecclesiastical employment decision, involving a fellow cleric whom he was responsible for overseeing, when as Bishop, he was the head of the SYNOD?"* The SYNOD contends that the answer to question is, "No."

Any "fostering" of a hostile environment can only be the result of ROHRER'S actions as the Bishop. Any adverse or hostile environment can only be the result of ROHRER allowing it to exist.

It is clear that despite recognizing that "religious institutions enjoy significant latitude over personnel decisions" ROHRER is attempting to frame his allegations in terms of "Hostile Work Environment and Sexual Harassment" instead acknowledging that the basis for all his causes of action are related to his decision making.

ROHRER describes the "Synod Council" as the SYNOD'S board of directors, thus acknowledging its ecclesiastical function within the SYNOD. ROHRER seemingly agreed to carry out the employment decision of the ELCA and the Synod Council. (ECF 1 2:10-12).

ROHRER relies on <u>Bostock v. Clayton County, Georgia</u> (2020) ___ U.S. _____; 140 S.Ct. 1731 to allow him to proceed on a sexual harassment theory of liability rather than framing the issue as an ecclesiastical employment matter involving his resignation. However, ROHRER ignores that <u>Bostock</u> does not involve a religious entity or that <u>Bostock</u> does not specifically address its application to religious employers. <u>Bostock</u> at 1754.

ROHRER attempts to disguise what are claims of "discrimination" in a cloak of "sexual harassment." ROHRER'S claims are clearly related to the underlying issues associated with Rev. Rabell-Gonzalez and thus must be dismissed pursuant to the ministerial exception provided by <u>Hosanna-Tabor Evangelical Lutheran Church and School.</u>

1.  **TITLE VII DOES NOT APPLY TO THE ALLEGED FACTS.**

ROHRER contends that the substance of his 42 U.S.C 2000 claim is repeated misgendering by persons neither employed or controlled by the SYNOD.  Just because ROHRER pleads a Title VII violation does not make the cause of action viable.  The controlling authority allowing a Title VII claim for sexual harassment against a religious entity is Bollard v. California Province of the Society of Jesus (9th Cir.1999 )196 F.3d 940.  Werft v. Desert Southwest Annual Conference of United Methodist Church (9th Cir. 2004)   377 F. 3d 1099, 1100-1101 summarizes the ministerial exception as set forth by Bollard.

> "The "ministerial exception," as described in this court's decision in Bollard, "insulates a religious organization's employment decisions regarding its ministers from judicial scrutiny under Title VII." 196 F.3d at 944. It derives from the Free Exercise and Establishment Clauses of the First Amendment and is intended to protect the relationship between a religious organization and its clergy from "constitutionally impermissible interference by the government." Id. at 945. Specifically, because clergy represent a religious institution to the people, a religious institution must retain unfettered freedom in its choice of clergy. Id. at 946."

Bollard allowed a religious novitiate to pursue a Title VII claim for sexual harassment when religious superiors sent him pornographic material, made unwelcome sexual advances, and engaged him in inappropriate and unwelcome sexual discussions. The plaintiff's reports of the alleged activity to religious superiors prompted no corrective action.   The court held that the facts associated with Bollard took the defendant outside its ministerial exception because the religious order with whom the plaintiff was associated was "neither exercising its constitutionally protected prerogative to choose its ministers nor embracing the behavior at issue as a constitutionally protected religious practice...." Id. at 944.  Furthermore, Bollard did not raise any significant issues about government entanglement with religion under the Establishment Clause. Id. at 948–50.

Most importantly, the court evaluated Bollard through the prism of "…whether Bollard was subjected to sex-based harassment by his superiors that was sufficiently severe or pervasive as to be actionable under Title VII." Id at 949.

ROHRER cannot continue forward with the current case because his allegations clearly involve government entanglement in the SYNOD'S religious matters, do not allege sex-based

harassment by the SYNOD that was sufficiently severe or pervasive as to be actionable under Title VII and fails to acknowledge ROHRER was the head of the SYNOD and thus responsible for remediation.   Unlike Bollard, which involved a religious novice, and someone who was powerless to take any remedial action within his order, ROHRER was a bishop and the head of the SYNOD.  (ECF 1 5:19-26).  As ROHRER repeatedly alleges, the hostile work environment was the direct result of his handling of Rev. Rabell-Gonzalez' removal. As such it is improper for the court to involve itself in the underlying activities leading up to ROHRER'S resignation.  . Werft at 1101- 1102.  Just like Werft, ROHRER'S claim of a "hostile work environment" must specifically disallowed because workplace conditions are part of the employment relationship with the church.  Id at 1103.

### 2.  ROHRER FAILS TO ALLEGE FACTS SPECIFIC TO THE SYNOD.

ROHRER'S complaint does not particularly identify any person specifically employed by the SYNOD who "misgendered" him after his installment as bishop.  Each of the allegations of "misgendering" allegedly occurred by persons associated with the ELCA not the SYNOD.  (ECF 1 11:9-19;  12:24-13:6; 12:14-23).

### C.  THE SECOND CAUSE OF ACTION FAILS BECAUSE ROHRER'S OWN FAILURE TO REMEDIALLY ACT CANNOT BE THE BASIS FOR A WHISTLEBLOWER CLAIM.

ROHRER alleges that his  "whistleblowing was a motivating factor behind the Church's termination of him." (ECF 1 15:4-5).  Again, ROHRER fails to particularly identify SYNOD actors who were responsible for his termination.

The basis for a "Whistleblower" claim is set forth by Labor Code section 1102.5(b).

Labor Code section 1102.5 (b) provides:

> An employer, or any person acting on behalf of the employer, shall not retaliate against an employee for disclosing information, or because the employer believes that the employee disclosed or may disclose information, to a government or law enforcement agency, **to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance,** or for providing information to, or testifying before, any public body conducting

> an investigation, hearing, or inquiry, if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties. [Emphasis added]

As repeatedly argued, ROHRER fails to acknowledge that he was the head of the SYNOD and as its head, had the "authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance." As Bishop, ROHRER could have remediated the allegedly deficient employment practices, but now attempts to use his failure to remediate as the basis for his whistleblower claim. If his employees were misclassified by the corporation for which he was the head, ROHRER could have solved the problem and classified the workers differently. ROHRER repeatedly avoids the pleading requirements of <u>Fed. Rules of Civ. rule 8(a)(2)</u> by lumping the SYNOD together with the ELCA. <u>Adobe Sys. Inc. at 964.</u> If ROHRER contends that despite his position as Bishop, he did not have the "authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance" then by deduction it could have only been the ELCA. Thus, this cause of action can only apply to the ELCA, and the SYNOD must be dismissed.

Furthermore, ROHRER admits that the worker classification policy of which he complains was changed consistent with his recommendations. (ECF 1 15:3-4).

### D. **THE THIRD CAUSE OF ACTION FOR DEFAMATION FAILS BECAUSE ROHRER FAILS TO IDENTIFY SPECIFIC A STATEMENT(S) ATTRIBUTED TO THE SYNOD.**

A defamation claim requires demonstrating "(a) a publication that is (b) false, (c) defamatory, (d) unprivileged; and (e) that has a natural tendency to injure or that causes special damages." <u>Taus v. Loftus</u> (2007) 40 Cal.4th 683, 720.

ROHRER'S complaint specifically references paragraphs 92 and 103 outlining the basis for his defamation claim. (ECF 1 27:24-25). Nowhere in the complaint does ROHRER identify statements made by SYNOD actors. As with all his allegations, ROHRER blankelty refers to

"The Church" rather than particularly identifying a SYNOD actor.  This is particularly important because the SYNOD must know what its actor(s) allegedly said and who made the statement.

Furthermore, ROHRER once again refuses to acknowledge that he was the head of the SYNOD, and as a result was able to intervene to stop any defamatory activity by SYNOD actors. The complaint references writings by Rev. Hazel Salazar-Davidson but refuses to identify the identity of her employer or what defendant appointed her a "leader on diversity, equity, and inclusion."  (ECF 1 23:4-6).  Again, whether or not ROHRER is allowed to proceed on a theory of "Joint Employers", the SYNOD as an individual defendant, must know the identity of its actor(s) and the alleged actions in which he/she/ they were engaged.  ROHRER fails to identify one specific actor other than Rev. Hazel Salazar-Davidson, who published allegedly defamatory statements.

As argued above. ROHRER as the Bishop knows which SYNOD employees, she was responsible for and whether Rev. Hazel Salazar-Davidson was a minster assigned to a church within the SYNOD, was working at SYNOD offices, or was working within some other capacity. In sum. ROHRER fails to state with any specificity the requisite element of "publication" as it relates to the SYNOD and thus this cause of action must be dismissed.

**E.  THE FOURTH CAUSE OF ACTION FAILS BECAUSE MISIDENTIFYING ROHRER AS A FEMALE IS NOT EXTREME AND OUTRAGEOUS CONDUCT.**

It is undisputed that ROHRER, despite identifying as a male, at all times material, used a female first name and promoted and identified himself to the public as Rev. Dr. Megan ROHRER.  (ECF 1 3:25-26)

Whether a defendant's conduct can reasonably be found to be outrageous is a question of law that must initially be determined by the court. Berkley v. Dowds (2007) 152 Cal.App.4th 518, 534.

The prima facie elements for an Intentional Infliction of Emotional Distress ("IIED") are "1.) extreme and outrageous conduct by a defendant with the intent of causing, or reckless disregard of the probability of causing, emotional distress; 2.) the plaintiff's suffering severe or extreme emotional distress; and 3.) actual and proximate causation of the emotional distress by

the defendant's outrageous conduct." <u>Hughes v. Pair</u> (2009) 46 Cal.4th 1035, 1050-1051. ROHRER cannot present facts that the SYNOD "engaged in activity that was "so extreme and outrageous as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized community." <u>Davidson v. City of Westminster</u> (1982) 32 Cal 3rd 197, 209. Furthermore, "[L]iability 'does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. … There is no occasion for the law to intervene … where someone's feelings are hurt.'" <u>Agarwal v. Johnson</u> (1979) 25 Cal.3d 932, 946.

Furthermore, ROHRER must show that the SYNOD "intended to inflict injury or engaged in with the realization that injury will result." <u>Hughes v. Pair</u> (2009) 46 Cal.4th 1035, 1050. (CACI 1600).

Again, ROHRER does not provide any facts identifying SYNOD actor(s) who engaged in any extreme or outrageous conduct sufficient for any IIED claim.  The only allegation in this regard is against "The Church" in that ROHRER was allegedly identified as a female when she was identifying as a male. (ECF 1 12:1-2) and "cultivated and allowed to fester without correction an environment that was openly hostile to ROHRER."  (ECF 1 13:26-14:2).   On only one occasion following ROHRER'S election as BISHOP, is any SNYOD actor specifically identified as someone who addressed ROHRER as a female.  (ECF 1 11:5-8).

ROHRER fails to allege any specific facts attributed to SYNOD actors other than one event and does not state facts stating how the SYNOD alone cultivated an environment that was openly hostile to ROHRER.

ROHRER'S allegation even if taken as true, does not rise to the level of outrageous conduct. ROHRER does not allege specific acts by SYNOD actors that were:

• Racially related;

• Related to his sexual orientation;

• Involve comments regarding his national origin;

• Involve threats of physical harm.

DEFENDANTS' MOTION TO DISMISS COMPLAINT [FRCP 12(b)(6)]

"[G]ruff," "abrupt," and "intimidating" conduct cannot be characterized as exceeding all bounds of that tolerated in a civilized community. <u>Lawler v. Montblanc North America, LLC</u> (9th Cir. 2013) 704 F.3d 1235, 1245.

ROHRER'S IIED cause of action fails because he does not plead facts to suggest any SYNOD actor's conduct directed towards him was intentional and extreme and outrageous or that the one misidentification of ROHRER following her election as Bishop was beyond that tolerated in a civilized community.  (ECF 1 11:5-8).  This cause of action is both legally and factually deficient and must be dismissed.

**F.  THE FIFTH CAUSE OF ACTION FAILS BECAUSE AN NEID CAUSE OF ACTION DOES NOT APPLY TO THE UNDERLYING FACT PATTERN.**

Negligence Infliction of Emotional Distress (NIED) causes of action are extremely limited.  There are two types of potential plaintiffs; bystanders and direct victims.  ROHRER claims he is a direct victim and such a claim makes his cause of action for NIED legally unavailable.  (ECF 1 23:15-16; 25:5-13)

The court only allows NIED causes of action in three types of cases; none of which apply in the instant case.

- Negligent mishandling of corpses; <u>Christensen v. Superior Court</u> (1991) 54 Cal.3d 868, 879

- Negligent misdiagnosis of a disease that could potentially harm another; <u>Molien v. Kaiser Foundation Hospitals</u> (1980) 27 Cal.3d 916, 928

- Negligent breach of a duty arising out of a preexisting relationship.  <u>Burgess v. Superior Court</u> (1992) 2 Cal.4th 1064, 1076.  (<u>CACI 1620</u>)

ROHRER does not plead any facts sufficient to allow a "direct victim" cause of action for NEID.

There is no allegation contained in the complaint that sets forth that the SYNOD engaged in the mishandling of a corpse, misdiagnosed of a disease, or had a requisite pre-existing

relationship.  ROHRER does not set forth any facts directed at the SYNOD which would allow this cause of action to continue.

ROHRER complains of nothing more than emotional distress that would be assumed by an ordinary negligence claim.  This cause of action is legally and factually deficient and must be dismissed.

**G.  THE SIXTH CAUSE OF ACTION FAILS BECAUSE ROHRER FAILS TO IDENTIFY WITH WHOM SHE WAS CONTRACTED.**

ROHRER contends that he was "forced to resign" and terminated.  (ECF 1 23:17-20).  As argued throughout, ROHRER does not allege what entity forced him to resign.   Furthermore, he does not allege with which defendant he was contracted.  Without facts specific to the SYNOD and the alleged actions and identities of its actors who were allegedly responsible for the breach, the SYNOD cannot properly defend the case.   CACI 300 specifically requires that the plaintiff identify the name of the defendant that breached the contract.    Without ROHRER identifying which of the defendants and the specific facts that resulted in the breach, ROHRER is again violating Fed. Rules Civ. Proc. rule 8(a)(2) and not providing the SYNOD sufficient facts to respond to the complaint.  Adobe Sys. Inc. at 964.

**V.**

**CONCLUSION**

For the reasons set forth herein, the SYNOD requests that ROHRER'S complaint be dismissed in its entirety without leave to amend.


DATED:  May 1, 2023                    **MAYALL HURLEY, P.C.**


                                       By___/s/ Mark E. Berry_____
                                          MARK E. BERRY
                                          Attorneys for Defendants,
                                          SIERRA PACIFIC SYNOD OF THE
                                          EVANGELICAL LUTHERAN CHURCH
                                          IN AMERICA